**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PHILIP SCOTT CANNON; MATHIAS CANNON; PHILIP SCOTT CANNON, on behalf of his minor child, QC,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>POLK COUNTY; POLK COUNTY SHERIFF; CITY OF DALLAS; DALLAS POLICE DEPARTMENT; BURNETTE KRAUGER; KERRY TAYLOR; MICHAEL OJA; JOHN WALLACE; MICHAEL HOLSAPPLE; PAUL BOX; RAY STEELE; BOB WOLFE; CHAD WOODS,<br><br>Defendants-Appellees. | No. 15-35047<br><br>D.C. No. 3:10-cv-00224- HA<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted June 7, 2017
Portland, Oregon

Before: TASHIMA, GOULD, and RAWLINSON, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appellant Philip Scott Cannon was convicted in 2000 of a triple homicide. Among the evidence admitted at the trial was evidence about the bullets from the crime scene. That purported scientific evidence, known as Comparative Bullet Lead Analysis ("CBLA"), has since been debunked as junk science. In 2009, Cannon and the Oregon Department of Justice entered into a stipulation vacating his conviction and remanding to the Polk County Circuit Court for a retrial. While preparing for a new trial, the Polk County District Attorney was unable to find the original trial exhibits. As a result, the district attorney dismissed the charges.

Cannon and his sons then commenced this action. The district court granted summary judgment to Appellees on Appellants' claims under 42 U.S.C. § 1983 and for various torts under Oregon state law. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I. Cannon's Claims Under 42 U.S.C. § 1983

Cannon's § 1983 claims are based on a litany of alleged misconduct by the various law enforcement officers and agencies involved in his arrest. Broadly, these alleged violations fall into three categories: *Brady*[1] violations; destruction of

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

evidence under *Trombetta/Youngblood*;[2] and alleged violations of Cannon's substantive due process rights. None of these claims has merit.

A.      Alleged *Brady* Violations

Much of the evidence that Cannon claims was withheld was turned over by Appellees to the district attorney for turnover to Cannon. This includes the Gannaway report,[3] the February 2000 crime lab report, and the crime scene video.[4] The Appellees satisfied their *Brady* obligations with regard to that evidence. *Broam v. Bogan*, 320 F.3d 1023, 1033 (9th Cir. 2003). Other evidence, including the McMahon photo lineup[5] and the crime scene video, was known to Cannon during discovery and could have been requested at any time. *Amado v. Gonzalez*, 758 F.3d 1119, 1137 (9th Cir. 2014). Finally, any *Brady* material contained on the

---

[2]      *California v. Trombetta,* 467 U.S. 479 (1984); *Arizona v. Youngblood*, 488 U.S. 51 (1988).

[3]      Cannon also claims that Appellee Krauger violated *Brady* by disclosing the Gannaway report late. However, the report was disclosed "at a time when disclosure would be of value to the accused." *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000). *Brady* was therefore satisfied.

[4]      Cannon has not identified the exculpatory value of either the February 2000 report or the crime scene video. Therefore, neither constitutes *Brady* material.

[5]      Cannon has not identified a defendant in this case who was responsible for the alleged suppression of the photo lineup. His claim therefore fails on that basis as well.

reverse side of the Property in Custody sheets was disclosed in the memorandum from Polk County Sheriff's Office Property and Evidence Technician Ailsa Gray. *See United States v. Winslow*, 962 F.2d 845, 848–49 (9th Cir. 1992) (holding that disclosure of a summary of a "rap sheet" was sufficient to satisfy *Brady*); *United States v. Van Brandy*, 726 F.2d 548, 551 (9th Cir. 1984) (holding that disclosure of summaries of an "informant file" was sufficient to satisfy *Brady*).

B.      Alleged *Trombetta/Youngblood* Violations

If evidence is only "potentially useful" to the defense, there must be bad faith on the part of the police to make out a *Trombetta/Youngblood* violation. *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989) (citing *Youngblood*, 488 U.S. 51). Cannon has failed to demonstrate bad faith on the part of any Appellee. His claims regarding the red lighter and the crime scene video therefore fail.

Cannon also contends that police failed adequately to investigate "Bimla" Boyd. The record belies this contention; police thoroughly interviewed "Bimla" on a number of occasions.

C.      Substantive Due Process Claims

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of L.A.*, 147

4

F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). None of the minor evidentiary and chain-of-custody errors alleged by Cannon rises to the level of a due process violation.

## II.    Absolute Immunity

Cannon alleges that Defendant Taylor violated his constitutional rights by sending bullets off for CBLA analysis, which is now recognized as unreliable. When Taylor sent the bullets for CBLA analysis, however, he was working at the direction of the district attorney to help prepare for trial. He is therefore entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (stating that prosecutorial functions include "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial").

## III.    Associational Rights

Cannon and his two sons assert violations of their Fourteenth Amendment familial associational rights. Interference with the parent-child relationship is a constitutional violation if a parent or child is "wrongfully detained." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 441 (9th Cir. 2004). To amount to a violation, the conduct of the accused must "shock the conscience" or "offend the community's sense of fair play and decency." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (alteration and internal quotation marks omitted). Cannon not only

was not wrongfully detained at any time, his detention was not so shocking or offensive as to rise to the level of a constitutional violation.

## IV. State Law Torts

Cannon asserts claims for malicious prosecution and abuse of process under Oregon Law.

With regards to malicious prosecution, Cannon has failed to show that the criminal proceeding against him terminated in his favor. The criminal prosecution against Cannon was dismissed because, preparatory to the retrial, the district attorney could not locate the original trial exhibits. The action was therefore terminated "without regard to its merits or propriety." *Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc.*, 49 P.3d 803, 808 (Or. Ct. App. 2002) (quoting *Gumm v. Heider*, 348 P.2d 455, 464 (Or. 1960)). Further, there was probable cause to prosecute Cannon. Finally, Cannon cannot show malice, which is the touchstone of this tort.

Cannon's claim for abuse of process fails because he cannot show that he was prosecuted for any "ulterior purpose." *Larsen v. Credit Bureau, Inc. of Ga.*, 568 P.2d 657, 658 (Or. 1977).

## V. Conclusion

For the reasons set forth above, the judgment of the district court is

**AFFIRMED.**

FILED

JUN 28 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

***Cannon v. Polk County***, **Case No. 15-35047**
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.